## JOHN H. BRUNER *et al.*

*v.*

## ELIZA ANN BRUNER.

*Filed at Ottawa November 14, 1885.*

1. ALIMONY—*affecting title to child's real estate.* Where a father, together with his wife, conveyed a tract of land to his infant daughter some six or seven years before the filing of a bill by his wife against him for a divorce and to set aside such conveyance, it was *held*, error to decree the sum which the husband was required to pay for alimony and costs a lien upon such infant child's land, and to give the wife a life estate in a part of such land. The child held the land free from any such charge.

2. GIFT—*conveyance of land by a father to his child.* Within the year after a person's marriage the husband and wife conveyed a tract of land owned by the former before the marriage, to his only child, a daughter then about four years old, intending thereby to give the land to her free from the claim of the wife, and he delivered the deed to his mother to take care of the same for his daughter: *Held*, that the infant daughter thereby was vested with the absolute title to the land, notwithstanding the father continued to occupy the premises as before, and that his wife, on obtaining a decree for alimony, could not subject the land to its payment.

WRIT OF ERROR to the Circuit Court of Warren county; the Hon. GEORGE W. PLEASANTS, Judge, presiding.

This was a bill by Eliza Ann Bruner, against John H. Bruner, for a divorce, on the ground of adultery, and against George F. Bruner, claiming that he was acting in collusion with John H. Bruner in the disposal of his personal property to prevent her from obtaining alimony, and against Isabelle

Bruner, an infant daughter of John H. Bruner, to set aside a conveyance of sixty acres of land made to her by her father, the defendant.

On a trial of the issue as to defendant's being guilty of adultery, the jury found for the complainant. Other issues in respect to the conveyance of the land to Isabelle, and in respect to the ownership of certain personal property claimed by George F. Bruner, were also submitted to a jury, and findings had in favor of complainant. On the 23d day of October, 1883, a final decree was rendered dissolving the marriage, requiring John H. Bruner to pay the complainant her expenses of the suit, and, in addition to that given in the interlocutory decree for alimony, the further sum of $560, and to pay all costs up to and including the January term, 1882. It further ordered that George Bruner, and the guardian of Isabelle Bruner, out of her estate, pay the costs of the suit after the January term, 1882; that complainant have the title and ownership of the personal property described in her bill, and that George Bruner pay her, within thirty days, the sum of $130, with interest, being the proceeds of sales of hogs by him, and the value of a cow. It further ordered and decreed that this decree be a first lien upon the east half of the north-east quarter of the north-west quarter of town 11 north, range 1 west, containing twenty acres, and also upon the west half of the west half of the north-east quarter, in the same township and range, as to all sums ordered to be paid by defendant John Bruner, subject, however, to the life estate decreed to be vested in complainant, and in default of payment that the first named tract be sold, and if that did not produce enough to satisfy the execution, the other land be sold, subject to the complainant's life estate therein. It further ordered and decreed that complainant have an estate for her life in the twenty-acre tract above described, and the west half of the north-west quarter of the north-east quarter of section 14, town 11 north, range 1 west.

Messrs. KIRKPATRICK & ALEXANDER, for the plaintiffs in error :

A delivery to a stranger for the grantee, though the grantee may be entirely ignorant of the matter, is a good delivery. *Bryan* v. *Wash*, 2 Gilm. 557; *Rivard* v. *Walker*, 39 Ill. 413; *Morrison* v. *Kelly*, 22 id. 610; *Hatch* v. *Hatch*, 9 Mass. 307; *Thompson* v. *Candor*, 60 Ill. 245.

A deed may be delivered by acts without words, or words without acts, or both. *Bryan* v. *Wash*, 2 Gilm. 557; *Steele* v. *Lowry*, 4 Ohio, 74; *Verplank* v. *Sterry*, 12 Johns. 552.

The law presumes much more in favor of the delivery of deeds in case of voluntary settlements, especially when made to infants, than in ordinary cases. *Bryan* v. *Wash*, 2 Gilm. 557; *Rivard* v. *Walker*, 39 Ill. 413; *Masterson* v. *Cheek*, 23 id. 72; *Gunnell* v. *Cockerill*, 84 id. 319.

The mere act of recording a deed is *prima facie* evidence of delivery, but may be rebutted successfully when it is shown the deed was not in the nature of a family settlement or of a gift to a minor. *Insurance Co.* v. *Campbell*, 95 Ill. 267.

Where the deed of a father to his child is absolute in form and beneficial in effect, and the father causes the same to be recorded, this is, in law, a sufficient delivery, and the title will pass. *Cecil* v. *Brown*, 28 Iowa, 242.

Where a deed to a minor is voluntarily recorded by the father, actual manual delivery and formal acceptance are not necessary. *Palmer* v. *Palmer*, 17 N. W. R. 463.

In *Bunn* v. *Winthrop*, 1 Johns. Ch. 329, cited in *Reed* v. *Douthit*, 62 Ill. 350, and in other Illinois cases, it is held that a voluntary conveyance or settlement, though retained by the grantor in his possession until his death, is good.

A gift to a child is meritorious, and may be enforced. *Reed* v. *Douthit*, 62 Ill. 352; *Crooks* v. *Crooks*, 34 Ohio St. 610.

After the deed was once delivered no act or declaration of the father could affect the right of the child. *Bryan* v. *Wash*, 2 Gilm. 557; *Bennett* v. *Stout*, 98 Ill. 47; *Reed* v. *Douthit*, 62 id. 352; *Mitchell* v. *Ryan*, 3 Ohio St. 308.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This case is before us upon a writ of error, brought by John H. Bruner, George Bruner and Isabelle Bruner, who severally assign various errors, but none as to the granting of the divorce.

There was error in the decree in making the sum which John H. Bruner was ordered to pay for alimony and costs, a lien upon the lands described in the bill, and in giving the complainant a life estate in a portion thereof, and in decreeing any costs against Isabelle Bruner.

The complainant and John H. Bruner were married on February 27, 1877, and but a short time after, on September 29, 1877, they executed a warranty deed of the lands described in the bill, to Isabelle Bruner, the sole child of said John H., and being then only about four years old. There is nothing to impeach this deed as vesting the title to the lands in Isabelle Bruner, except the testimony of the complainant that she signed the deed upon condition that it should not be delivered during her lifetime, and the fact that the deed was not filed for record until February 5, 1881,—shortly before John H. Bruner left the State. The deed was signed and duly acknowledged by the complainant. The justice of the peace who wrote and took the acknowledgment of the deed, testifies that both the complainant and John H. Bruner were present at the time, and a conversation was had before him with reference to the object and reason why the deed was made. That the statement was made, and he is under the impression that it was made by the complainant herself, that she had some property that came to her from her first husband that she desired to go to her daughter, and that this land was land that John H. Bruner owned before she married him, and he desired it to go to his daughter, and they thought that would be nothing more than right and proper,—that nothing was said about the delivery of the deed.

o

Without adverting to the testimony of John H. Bruner,— further than to say that it contradicts that of complainant and corroborates that of the justice of the peace as to the reason for making the deed,—George F. Bruner and his wife both testify as to different conversations had with complainant, in which she said she did not work for anything in this real property, and she thought it was right that Isabelle should have it. Mrs. Bruner, the wife of George F. Bruner, testifies that in the fall after the making of the deed, John H. Bruner handed the deed to his mother, who lived with George F. Bruner, saying he wanted his mother to take the deed and take care of it for Isabelle; that his mother put the deed in her bureau drawer; that she frequently afterward saw it lying in the bureau drawer, and that on February 5, 1881, when her husband got the deed to have it recorded, it was in this same drawer. It appears that John H. Bruner had other papers in this drawer, but that this deed was by itself, the other papers being tied up separate. George Bruner, who, at the request of John H., took the deed to the recorder's office to be recorded, testifies to seeing the deed, in the fall of 1877, in his mother's bureau drawer at his house, and that he got the deed out of that drawer. The witness Churchill testifies to a conversation with complainant two or three weeks after the making of the deed, in which she said she and her husband had made a deed to his girl to give her his property, and she had given her property to her girl. The whole evidence considered, we regard it as wholly insufficient to affect the validity of the deed as vesting the full and absolute title to the lands in Isabelle Bruner.

As respects George Bruner's claim of title to the personal property the evidence was conflicting, and not so clearly against the finding of the decree as to call upon us to interfere therewith in that respect; and we may say the same of the decree otherwise than as regards the real estate and costs against

Isabelle Bruner. As to such real property the bill should have been dismissed.

As respects the lands described in the bill, and costs against Isabelle Bruner, the decree is reversed. In all other respects it is affirmed, and the cause is remanded for further proceedings in conformity with this opinion.

*Decree reversed in part and in part affirmed.*